## THE SENECA.

### NEW YORK & CUBA MAIL S. S. CO. v. DE BUHR.

(District Court, S. D. New York. February 28, 1908.)

COLLISION—STEAMSHIP AND BARK MEETING IN FOG—VIOLATION OF RULES.

　　A collision off the New Jersey coast at night in a dense fog between a steamship south-bound and a meeting bark *held* due solely to the fault of the steamship; the evidence showing that she was going at an excessive speed, not less than eight knots an hour, and that on hearing the foghorn of the bark on her starboard bow, instead of stopping and navigating with caution, as required by article 16 of the International Rules [U. S. Comp. St. 1901, p. 2869], her master, misunderstanding the number of blasts, ported the helm and proceeded without reduction of speed across the course of the bark, which was sailing free at a speed of about four knots and giving three blasts of her foghorn, properly indicating her course, which was not changed.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, §§ 43, 51.

　　Collision rules, speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

In Admiralty. Suit and cross-libel for collision.

Convers & Kirlin (J. Parker Kirlin, of counsel), for the Charles Loring.

Wing, Putnam & Burlingham (Harrington Putnam, of counsel), for the Seneca.

HOLT, District Judge. These are a libel and cross-libel filed to recover damages growing out of a collision between the bark Charles Loring and the steamship Seneca, three or four miles off the New Jersey coast, opposite Seagirt, on February 2, 1907, about 5:50 p. m., during a thick fog. At the time of the collision the bark Charles Loring was bound up the coast, on a voyage from Savannah to New York. She was steering a course north by east half east, and was running free, with the wind light from the southwest. A fog set in thick about 4:45 p. m. The Loring thereupon shortened sail, and thereafter was making three or four knots an hour. From the time the fog set in until the collision a mechanical foghorn on the bark sounded a signal of three blasts, indicating that she was sailing with the wind abaft the beam, at regular intervals of less than a minute. While proceeding in this manner, a whistle was heard, and at nearly the same time the masthead and green lights of a steamer, which proved to be the Seneca, were seen bearing on the starboard bow of the bark. After a short interval the steamer opened up her red light, and headed in on a turning course across the bark's bow. She continued swinging under a port helm, and soon shut out her green light, and while swinging across the course of the bark the collision occurred. The stem of the steamer passed the bark; but her bow collided with the bark's jibboom, carrying away the jibboom, bowsprit, and stem, crushing in the bow, and doing such damage that the bark filled shortly after the collision. Her crew were rescued by boats from the Seneca, and the result of the collision was that the bark, cargo, and crew's effects were a total loss. The man at the wheel, the captain, and all the witnesses on the bark testify that she never changed her course until the collision, and that the three-blast fog signal was continuously sounded until the collision.

The evidence on the part of the Seneca shows, in substance, that the Seneca was bound from New York to Newport News. She had left New York that afternoon, had passed the Scotland Lightship at 4:36, and from that point was steering south ⅞ west. She went at full speed, which was about 13 knots an hour, until 5:40 p. m., when she met the fog. Her speed was then reduced from 60 to 46 revolutions of her engines a minute. This reduction left her speed at least 8 knots an hour, and probably more, and this speed was maintained until the collision. Shortly after the reduction of speed, the men on the Seneca heard the whistle of a tug with a tow on the starboard bow, which passed them, bound north; the tug and the steamer exchanging very frequent signals. About the time this tug and tow got abeam of the steamer, the lookout heard what he understood to be one blast of a foghorn on the steamer's starboard bow. Various other persons on the Seneca claim to have heard the same one blast. But the chief officer testifies that he heard two blasts. Rule 15 [U. S. Comp. St. 1901, p. 2868] prescribes that a sailing vessel under way in fog shall sound, when on the starboard tack, one blast; when on the port tack, two blasts; and when with the wind abaft the beam, three blasts. The master of the Seneca, assuming, from hearing one blast of the horn, that it came from a vessel on the starboard tack, heading southeast, immediately ordered the steamer's helm to be put hard aport, and this

was done, causing the steamer to swing rapidly to starboard. The witnesses on the steamer testify that shortly after they heard two blasts of a foghorn off the port bow, but the Seneca's answer states that the second signal heard from the bark was a three-blast signal. Soon after the horn had been heard a second time, the Loring was seen through the fog, on the Seneca's port bow. As soon as the second officer on the bridge saw the bark, he reported to the captain that the vessel was not heading offshore, and he had better starboard. The captain replied that he had the wheel hard aport, and that there was no time to starboard. He immediately gave orders to stop and back the engines full speed, but almost immediately the collision occurred.

I think the Seneca was clearly at fault in the following respects: (1) The general rule applies that a steam vessel is presumptively at fault for a collision with a sailing vessel, under rule 20 of the International Rules [U. S. Comp. St. 1901, p. 2870]. (2) The Seneca was going at an excessive speed in a fog, in violation of rule 16. (3) She also violated rule 16, because, hearing, apparently forward of her beam, the fog signal of a vessel, the position of which was not ascertained, she did not stop her engines and navigate with caution until danger of collision was over.

I do not think that the Loring was at fault. It is claimed that she changed her course; but, in my opinion, the evidence preponderates that she did not. It is claimed that her lights were not properly placed; but the evidence shows that they were placed where they had always been carried on the Loring, and where lights on barks are usually carried, and I think they were in a proper place. It is claimed that the foghorn was not sounded from a proper position on the bark; but the evidence, in my opinion, does not support this contention. It is claimed that the bark did not have a proper lookout. The evidence shows, in my opinion, that she did not have a proper lookout; but it also shows that the absence of a lookout had nothing to do with the collision. The steamer was sighted by several men as soon as she could be seen, and, when sighted, her lights bore green to green. If the steamer had held her course, there would have been no collision. The collision was clearly due to the fact that the master of the Seneca, hearing what he supposed was one blast of a foghorn, assumed that the bark was sailing southeast on a starboard tack, and that by porting he would pass under her stern, when in fact she was sounding a three-blast signal, indicating that she was sailing before the wind. Having heard a foghorn, a point off his starboard bow, the master of the Seneca should have stopped his engines and navigated with caution until danger of collision was over, instead of porting without reducing his speed at all.

The fact that so many of the witnesses from the Seneca testify that the second signal heard on board the Seneca was one of two blasts is significant. There is no doubt that the signal given on the Loring was a three-blast signal. All the witnesses on the Loring so testify. She was sailing before the wind in a fog. The rule required her to give three-blast signals. It is inconceivable that, if she was giving signals at all, she should not, for her own protection, have given the signal required by the rules. The answer admits that the second signal heard was a three-blast signal, and yet all the witnesses on the Seneca testify

that what they heard was a two-blast signal. All admit that they heard a signal; but, if they heard any signal at all, how could so many make the same mistake? The entries in the Seneca's log are also significant. The statute requires that, in every case of collision, the master shall immediately cause a statement thereof, and of the circumstances under which the same occurred, to be entered in the official logbook. The entry in the Seneca's log, in reference to this collision, is as follows:

"5:40 p. m. Shut in foggy; slowed to ½ speed; fresh S. S. W. wind.

5:49. Heard a fog horn. Stopped and backed full speed.

5:51. Collided with bark Charles Loring bound north; the bark striking the Seneca on port bow about 60 feet from stem above the water line.

5:55 p. m. Lowered lifeboat No. 2 with second officer and four men, and rescued the bark's crew.

7:35 p. m. Boat arrived with bark's crew.

7:40 p. m. Started ahead slow. Weather foggy. Fresh S. W. wind."

Such an entry, so meager, so evasive, so destitute of any statement of the real circumstances under which the collision occurred, not only is a clear violation of the duty imposed on the master by the statute, but it affords strong grounds for the inference that the master, when he made it, knew that the Seneca was at fault.

My conclusion is that there should be a decree for the libelants in the suit against the Seneca, with a reference to ascertain the amount of damage, and that the cross-libel against the Loring should be dismissed.